The OSCAR W. LARSON
COMPANY, Plaintiff,

v.

UNITED CAPITOL INSURANCE
CO., Defendant.

No. 1:92–CV–244.

United States District Court,
W.D. Michigan.

Feb. 8, 1993.

**446**

Lisa Stoy, Bigler, Berry, Johnston, Sztykiel & Hunt, P.C., Troy, MI, Joseph Falcone, Southfield, MI, for plaintiff.

Constantine N. Kallas, Leonard A. Henk, Kathlyn M. Rasmussen, Kallas & Henk, PC, Bloomfield Hills, MI, for defendant.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

This is an insurance case. Pending before the Court are cross-motions for summary judgment. This case involves the same policy at issue in the case of *Action Auto v. Oscar W. Larson.* Defendant relies on several exclusions to that policy which this Court has already discussed in a recent Opinion issued in the *Action Auto* case. *See Action Auto v. Larson,* 845 F.Supp. 417 (W.D.Mich.1993). The Court adopts many of the conclusions it reached in the prior case with regard to the applicability of those policy exclusions. Defendant also claims that it is not liable because no adverse party in the state suit has alleged an "occurrence" as defined in the insurance policy.

### I.

Plaintiff Oscar W. Larson Company ("Larson") installs underground field distribution systems. In the fall of 1988, Meijer, Inc. decided to install a Pipe Jacket Total Containment and Leak Detection system ("system") manufactured by Total Containment, Inc. ("TCI") and distributed by Clawson

Tank Company ("CTC"). The work was done by several different general contractors. Larson was hired by three of these general contractors to perform work relating to the installation of the system. Larson performed some of the work at these sites itself, and it used subcontractors to perform some of the work.

In June 1902, Meijer filed its First Amended Complaint in Kent County Circuit Court against TCI, CTC, and seven general contractors. The complaint alleged that the general contractors had breached their contracts by failing to provide Meijer with a properly functioning system and that TCI and CTC were liable for negligence in the design, manufacture, and sale of the system. The complaint alleged that while the system initially passed air pressure tests, it subsequently failed. The general contractors which employed Larson subsequently filed third-party complaints against it for contribution and/or indemnification. A cross-claim was also filed against Larson by CTC alleging negligence for improper installation of the system.

Larson has a general liability insurance policy which it purchased from defendant United Capitol. Defendant has previously defended Larson in an action for negligent installation of a gasoline containment system. *See Action Auto v. Larson,* 845 F.Supp. 417 (W.D.Mich.1993). Defendant, however, has refused to provide a defense in this action pursuant to a denial letter sent on January 21, 1992. Larson filed a complaint in the Kent County Circuit Court seeking a declaratory judgment that defendant had a duty to defend Larson in the underlying litigation. Larson seeks to recover costs and attorney's fees. Defendant removed the case to this Court based upon diversity of parties.

### II.

Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc. (In re Atlas Concrete Pipe, Inc.),*

668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the nonmoving party, a reasonable fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (citations omitted).

■ The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this has been done, the nonmoving party must come forward with specific facts showing that there is a material issue of fact on an issue which the nonmoving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

### III.

Defendant claims that it has no duty to defend because specific exclusions in the insurance policy prevent liability. When interpreting the insurance policy, the Court bears in mind that Michigan courts have held "(1) that an ambiguous contract provision must be construed against the insurer and in favor of the insured, and (2) that exclusionary clauses in insurance policies are to be strictly construed against the insurer." *Farm Bureau Mut. Ins. Co. v. Stark*, 437 Mich. 175, 181, 468 N.W.2d 498, 501 (1991). If the meaning of terms used in the contract are clear and unambiguous, however, their terms are "to be taken and understood in their plain, ordinary, and popular sense." *Id.* (internal citations omitted).

### A.

First, defendant claims that liability is barred by an "absolute pollution exclusion" clause. Defendant relies upon the Pollution Exclusion Endorsement (Revised) to the Insurance Policy at page UC–253 which is attached to defendant's motion. Defendant relies, particularly, upon sections F(1)(d)(i) and F(2) of the exclusion agreement.

■ Section F(1)(d)(i) excludes property damage arising out of the discharge of pollutants at or from a site on which the insured or its contractors or subcontractors are performing operations "to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants." Insurance Policy, Defendant's Brief in Support of its Motion for Summary Judgment at UC–253 § F(1)(d)(i). This Court determined in *Action Auto* that this exclusion did not apply when evidence showed that Larson did not perform actions to treat, detoxify, or neutralize pollution. In the instant case, there is likewise no evidence that Larson was performing such an operation. In fact, plaintiff has submitted an affidavit which states that Larson was not in the business of conducting such operations and that it was not doing so during the installation in question in the lawsuit. Affidavit of Bruce F. Larson at ¶¶ 2 and 3.[1] The Court therefore determines that Section F(1)(d)(i) of the "absolute pollution exclusion" exception does not apply.

■ Defendant also relies upon Section F(2) of the "absolute pollution exclusion" endorsement to the policy. This exclusion states that the insurance does not cover "any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain treat (sic), detoxify or neutralize pollutants." Insurance Policy, Defendant's Brief in Support of its Motion for Summary Judgment at UC–253 § F(1)(d)(i). The Court found in *Action Auto* that this exclusion did not apply in the absence of evidence that the government ordered the *insured* to take action with regard

---

1. Bruce F. Larson is the President of the Oscar W. Larson Company. Affidavit of Bruce F. Larson at ¶ 1.

to pollution. There is no evidence or allegation that Larson has been given any order by the government or any subdivision of the government to clean up, monitor, or otherwise become involved in pollution removal. In fact, the affidavit of Bruce Larson states that no such order was given. Affidavit of Bruce F. Larson at ¶ 4.

### B.

Defendant next argues that exclusion j(5) negates its duty to pay. This exclusion states:

2. This insurance does not apply to

. . . .

j. "Property damage" to:

. . . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

Insurance Policy, Defendant's Brief in Support of its Motion for Summary Judgment at § 1 ¶ 2(j)(5).

Plaintiff claims that this exclusion is not applicable because it pertains only to damage which occurs during the time that operations are being performed and not to property damage occurring after the work is completed. Plaintiff also argues that the language of the exclusion denying coverage to "that particular part" of real property on which work is being performed limits the exclusion to damage done to the TCI system itself or to the cost of reinstallation of a new system. Plaintiff claims that the exclusion does not prevent coverage for damage done to surrounding property.

The Court has not yet addressed the issue of whether exclusion j(5) contains a temporal element. The Court has requested that defendant United Capitol rebrief this issue in connection with the *Action Auto* case. In fairness to the parties and in order to ensure that a decision is made only after adequate consideration of all arguments, the Court determines that the issue should be rebriefed in this case as well. The Court also holds that the parties should brief whether or not

the phrase "that particular parcel of land" should be interpreted to include the land at issue in the suit *sub judice*.

### C.

■ Defendant argues that exclusion 2(m) of the policy prevents coverage. That exclusion reads:

2. The insurance does not apply to:

. . . .

m. property damage to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Insurance Policy, Defendant's Brief in Support of its Motion for Summary Judgment, § 1 ¶ 2(m).

Impaired property is defined as follows:

5. "Impaired property means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous: or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work": or

b. "Your fulfilling the terms of the contract or agreement.

Insurance Policy, Defendant's Brief in Support of its Motion for Summary Judgment, § 5 ¶ 5.

The Court determined in the *Action Auto* Opinion that this section was limited to damage done to property which could be restored to use through repair, replacement, adjustment, or removal of the insured's product or work. The Court finds that no evidence has been presented that any damage done to property surrounding the containment system can be remedied by the repair, replacement, or adjustment of plaintiff's work product. Furthermore, such a result is illogical as any pollution done to surrounding property could not possibly be rectified merely by the removal of the defective work product.[2] Defendant's motion for summary judgment must therefore be denied on this issue. Plaintiff's motion is granted to the extent that it asks that the Court hold this defense to be invalid.

### D.

■ Defendant relies on the exclusion contained in paragraph 2(n) of the insurance policy. That exclusion reads:

2. This insurance does not apply to:

. . . .

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Insurance Policy, Defendant's Brief in Support of its Motion for Summary Judgment, § 1 ¶ 2(n).

In *Action Auto*, the Court found that this exclusion did not apply to the removal of soil or contaminants because of the failure of the insured's product. For the reasons stated in that Opinion, defendant's motion for sum-

mary judgment is denied and plaintiff's motion for summary judgment is granted to the extent that it asks this Court to declare the defense legally insufficient.

### E.

■ Defendant's reply to plaintiff's summary judgment motion states that coverage is excluded under provision 2(k) and 2(*l*) of the insurance contract. These provisions state:

2. This insurance does not apply to:

. . . .

k. "Property damage" to "your product" arising out of it or any part of it.

*l.* "Property damage" to "your work" arising out of it or any part of it and included in the "product completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Insurance Policy, Defendant's Brief in Support of its Motion for Summary Judgment, § 1 ¶ 2(k), (*l*).

Defendant maintains that these exceptions were meant to exclude damage that is considered a risk of doing business and that damage at issue is such a risk. This issue was addressed by the Michigan Supreme Court in *Fresard v. Michigan Millers Mut. Ins. Co.*, 414 Mich. 686, 327 N.W.2d 286 (1982). The exclusion in *Fresard* stated that there was no coverage for "work performed" if the damage to that work was due to "the work or any portion thereof" or "materials, parts or equipment furnished in connection therewith." *Id.* 327 N.W.2d at 292. The Court held that this provision:

[D]oes not remove coverage when property other than the work product itself is damaged due to problems with the product itself, materials or workmanship. The insured only is required to absorb the cost of *replacement or repair of its own work where the damage arises out of the work.*

2. The Court acknowledges that removal or repair of the work product might prevent further damage from being done.

*Id.* (emphasis in original). *See also* Hendrick and Wiezel, *The New Commercial and General Liability Forms—and Introduction and Critique,* 36 Federation of Insurance and Corporate Counsel Quarterly 319, 362 (1986) (stating that coverage exists under the provision except where both the property damaged and the property causing damage are the work of the insured, itself).

Similarly in the case of *Weedo v. Stone–E–Brick, Inc.*[3] cited by both parties, the court distinguished between costs incurred by a faulty product and damages due to injury of people or property caused by that product. *Stone–E–Brick, Inc. v. Pennsylvania National Mut. Cas. Ins. Co.,* 81 N.J. 233, 239–40, 405 A.2d 788, 791 (1979). The Court reasoned that the consequence of creating a faulty product is a risk of doing business and that the insured should bear the cost of replacement or repair of faulty goods and works. *Id.* The Court also determined that injury to people and damage to property caused by the faulty workmanship exposed the contractor to almost limitless liability. *Id.* Thus, the court reasoned that while faulty craftsmanship might be the cause of both a business expense of repair and a loss represented by damage, the risks were quite different. *Id.*

Relying upon these cases, the Court holds that the exclusions contained in paragraphs k and l exclude only damage to the insured's work or work product. Plaintiff does not ask that the coverage apply to the cost of repair or installation of the product itself. Instead, plaintiff asks that the cost of investigating and remediating pollution to adjacent land be covered. Plaintiff's Brief in Reply to Defendant United Capitol Insurance Company's Response to Plaintiff's Motion for Summary Judgment at 4. The Court finds that such costs are not excluded by provisions k or l of the insurance policy.[4]

---

**3.** *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 239, 405 A.2d 788, 791 (1979).

**4.** Defendant asks that this Court adopt the rationale of *Hartford Acci. & Indem. Co. v. Pacific Mut. Life Ins. Co.* which held that any consequential damages arising from damage excluded under the business risk exception was not covered because it was not "property damage *to which this insurance applies*" as defined by the insurance policy. *Hartford Acci. & Indem. Co. v.*

## IV.

Under the policy, coverage only exists for property damage caused by an "occurrence." Insurance Policy, Defendant's Brief in Support of its Motion for Summary Judgment, § 1 ¶ 1(a). The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at § 5 ¶ 9. Defendant claims that because the complaint is only that defective work was performed, there has been no "accident" and thus no "occurrence" as defined by the policy. Defendant relies principally upon *Hawkeye–Security Insurance Company v. Vector Constr. Co. 6,* 185 Mich.App. 369, 460 N.W.2d 329 (1990). In *Hawkeye,* the Michigan Court of Appeals determined that there was no "occurrence" in an instance in which an insured sub-contractor was sued by a general contractor who found that the work that was done did not meet project specifications.

The *Hawkeye* opinion was based on the rationale that the use of inferior cement, in and of itself, did not constitute an occurrence. In the case before the *Hawkeye* court, the only "damage" was the damage resulting from the fact that the work product itself was inferior to what it would have been if the correct type of cement had been used. While the concrete had to be repaired, no damage was done to any property other than the insured's work product itself. The court distinguished the case from others in which an insured's faulty work damages other property. *Id.* 460 N.W.2d at 333. Specifically, the *Hawkeye* court distinguished the case from *Bundy Tubing Co. v. Royal Indemnity Co.,* a Sixth Circuit case which is more factually identical to the case *sub judice* than *Hawkeye.* In *Bundy,* the Sixth Circuit, applying Michigan law, found that there was an

*Pacific Mut. Life Ins.,* 861 F.2d 250 (10th Cir. 1988). Defendant argues that any pollution which leaked onto Meijer's property was a consequence of damage to the work product which would be excluded under 2(k) and 2(l) and that the damage caused by such pollution is excludable as consequential damages. The Court finds, however, that *Hartford* does not apply Michigan law and that *Fresard* should be followed.

"accident" in an instance in which tubing in a radiant heating system which contained defects leaked causing damage to surrounding property. *Bundy Tubing Co. v. Royal Indemnity Co.,* 298 F.2d 151 (6th Cir.1962).[5]

Under this Court's interpretation of *Hawkeye* and *Bundy*, leaking of the gas containment system constitutes an "occurrence" as defined by the insurance policy. Furthermore the Court finds that there has been an allegation of "property damage" as defined by the policy.[6] Because the Court has found that there was an occurrence, it need not reach the issue of whether defendant is estopped from raising the absence of an occurrence as a defense. Plaintiff's motion for summary judgment must therefore be granted to the extent that it asks that this Court declare that defense to be invalid. Defendant's motion for summary judgment is denied on this issue.

## V.

Defendant argues in its response to plaintiff's summary judgment motion that if the Court finds it has a duty to defend the Court should find that plaintiff is not entitled to recover amounts paid in settlement of claims in the underlying matter. Because the Court has not yet determined whether or not defendant has a duty to defend, it does not yet address this argument.

## VI.

For the reasons stated above, defendant's motion for summary judgment must be denied and plaintiff's motion for summary judgment must be granted in part and denied in part. Each party is given thirty days to submit renewed summary judgment motions which make further arguments about the applicability of exclusion j(5). The parties may respond to each other's motion within the time limits fixed by the Western District of Michigan's Local Court Rules.

---

5. Defendant also relies upon *Reliance Ins. v. Mogavero,* 640 F.Supp. 84 (D.Md.1986). In *Reliance,* the federal court for the district of Maryland found that an occurrence "does not include normal or expected consequences of poor workmanship." *Reliance* applied Maryland law and not Michigan law and is not binding upon this Court. Furthermore, the decision rests, at least in part, on the determination that the claims against the insured were ones for damage to his own work product and not for damage to other property. Thus, the case is distinguishable from the case at bar.

6. Plaintiff argues in its motion for summary judgment that allegations were made in the state court suit concerning property damage and defendant does not dispute this.