The OSCAR W. LARSON
COMPANY, Plaintiff,

v.

UNITED CAPITOL INSURANCE
CO., Defendant.

No. 1:92–CV–244.

United States District Court,
W.D. Michigan, S.D.

Sept. 7, 1993.

---

*OPINION*

**BENJAMIN F. GIBSON, Chief Judge.**

This is an insurance case. This case was the subject of a prior Opinion of this Court rendered on February 8, 1993. *See The Oscar W. Larson Co. v. United Capitol Insurance Co.,* 845 F.Supp. 445 (W.D.Mich.1993). Currently pending before the Court are renewed cross-motions for summary judgment and a motion for reconsideration. This case involves the same insurance policy at issue in the case of *Action Auto v. Oscar W. Larson,* 845 F.Supp. 428 (W.D.Mich.1993). The Court adopts many of the conclusions it reached in *Action Auto* with regard to the applicability of certain policy exclusions.

### I.

The facts, as stated in the Court's Opinion of February 8, 1993, are as follows: Plaintiff Oscar W. Larson Company ("Larson") installs underground field distribution systems. In the fall of 1988, Meijer, Inc. decided to install a Pipe Jacket Total Containment and Leak Detection system ("system") manufactured by Total Containment, Inc. ("TCI") and distributed by Clawson Tank Company ("CTC"). The work was done by several different general contractors. Larson was hired by three of these general contractors to perform work relating to the installation of the system. Larson performed some of the work at these sites itself, and it used subcontractors to perform some of the work.

In June 1992, Meijer filed its First Amended Complaint in Kent County Circuit Court against TCI, CTC, and seven general contractors. The complaint alleged that the general contractors had breached their contracts by failing to provide Meijer with a properly functioning system and that TCI and CTC were liable for negligence in the design, manufacture, and sale of the system. The complaint alleged that while the system initially passed air pressure tests, it subsequently failed. The general contractors which employed Larson subsequently filed third-party complaints against it for contribution and/or indemnification. A cross-claim

Lisa Stoy, Bigler, Berry, Johnston, Sztykiel & Hunt, Troy, MI, Joseph Falcone, Southfield, MI, for plaintiff.

Constantine N. Kallas, Leonard A. Henk, Kathlyn M. Rasmussen, Kallas & Henk, PC, Bloomfield Hills, MI, for defendant.

was also filed against Larson by CTC alleging negligence for improper installation of the system.

Larson has a general liability insurance policy which it purchased from defendant United Capitol. Defendant has previously defended Larson in an action for negligent installation of a gasoline containment system. *See Action Auto v. Larson*, 845 F.Supp. 428 (W.D.Mich.1993). Defendant, however, has refused to provide a defense in this action pursuant to a denial letter sent on January 21, 1992. Larson filed a complaint in the Kent County Circuit Court seeking a declaratory judgment that defendant had a duty to defend Larson in the underlying litigation as well as for coverage for any settlement or judgment which may be awarded. Defendant removed the case to this Court based upon diversity of parties. Larson has used its own counsel to defend the suit and now seeks reimbursement for attorneys fees.

## II.

Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc. (In re Atlas Concrete Pipe, Inc.)*, 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the nonmoving party, a reasonable fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this has been done, the nonmoving party must come forward with specific facts showing that there is a material issue

of fact on an issue which the nonmoving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

## III.

In a prior Opinion, this Court disposed of several issues pending in the case and requested that the parties rebrief other issues. Specifically, the Court made the following findings:

(1) Insurance coverage was not barred by the "absolute pollution exclusion" clause located at Section F of an endorsement to the insurance policy. *The Oscar W. Larson Co. v. United Capitol Insurance Co.*, 845 F.Supp. 445, 447–48 (W.D.Mich.1993).

(2) Coverage was not barred by exclusion 2(m) of Section I of the Insurance Policy. *Id.* at, 448–49.

(3) Coverage was not barred by exclusion 2(n) of Section I of the insurance policy. *Id.* at, 449.

(4) The Court interpreted exclusion 2(k) and 2(*l*) of Section I of the insurance policy to exclude only coverage for damage to the insured's work or work product and not to exclude damage done to surrounding or adjacent land. *Id.* at, 449–50.

(5) Finally, the Court found that the damage resulted from an "occurrence," such that it was covered by the insurance policy. *Id.* at, 450–51.

The Court requested that the parties submit renewed summary judgment motions to further brief the issue of whether exclusion 2(j)(5) of Section I of the insurance policy barred coverage. Specifically the Court requested that the parties address whether the clause contained a temporal element and whether or not the property damage at issue in this litigation fell within the definition of "that particular part of real property." The parties have submitted renewed briefs addressing these issues. In addition, defendant

has filed a motion for reconsideration in which it contends that the Court was incorrect in determining that the pollution exclusion clause contained in the policy endorsement does not bar coverage.

## A.

■ The first issue the Court examines is the scope of the exclusion contained at paragraph 2(j)(5) of Section I of the insurance policy. This exclusion reads as follows:

2. This insurance does not apply to:

. . . .

j. "Property damage" to:

. . . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

Insurance Policy, § 1 ¶ 2(j)(5).

The Court has already discussed at length the issue of whether this exclusion contains a temporal element. *See Action Auto v. Oscar W. Larson,* 845 F.Supp. at 434–36, 442 (W.D.Mich.1993). For the reasons stated in that Opinion, the Court determines that the exclusion *does* contain a temporal element such that the exclusion only applies to damage which was caused during the time in which plaintiff Oscar W. Larson was working on the property.

It does not appear that defendant United Capitol is contending that any of the damage done in the instant case occurred during the time plaintiff was performing operations. Thus, the Court's holding on the temporal requirement of exclusion 1(j)(5) may be dispositive of the issue. In the event that any of the damages are found to have originated at the time the work was in progress, the Court goes on to examine the parties' varying positions on the extent of the property damage falling within the scope of the exclusion.

In its first *Action Auto* opinion, this Court interpreted the phrase "that particular part of real property" in conjunction with the preposition "on" to include more than fix-tures attached to real property. The Court found that the term was meant to apply to damage done to land or other property upon which the defendant physically worked. *See Action Auto v. Larson,* 845 F.Supp. at 425 (W.D.Mich.1993). While this definition is somewhat broader than that advanced by the *Action Auto* plaintiff or by plaintiff Oscar Larson in the pending case, it does not encompass surrounding or adjacent land upon which no work has been performed.

■ Defendant contends that the exclusion applies because plaintiff was performing operations on real property at the Meijer stores and because the damages were confined to land owned by Meijer. In making this argument, defendant misreads the Court's prior holding. Defendant's reading ignores the phrase "that particular part of real property" which is contained in the exclusionary clause. While the Court has already rejected plaintiff's interpretation of the clause as *too narrow,* it believes *defendant's* is too broad. The Court finds that the exclusion applies to property located underneath that upon which the system was constructed and to any property which was operated upon in the sense that it was dug into, drilled, moved, or disturbed in the construction of the system. Damage to land located on the opposite side of the store, however, would not be excluded simply because operations were being performed elsewhere on the land.

■ Plaintiff argues that, at three of the Meijer locations at which it installed systems, it did not perform any operations upon the soil or groundwater. Plaintiff has submitted affidavit evidence that at these stores neither it nor its subcontractors did any excavation, back-fill, concrete work or otherwise disturbed the soil or groundwater at these locations. Affidavit of Kim Larson and Bruce Larson, at ¶¶ 2 and 3, Affidavit of Kim Larson at ¶¶ 2, 4, and 5, Exhibit E, Plaintiff's Motion for Summary Judgment. This evidence is unrefuted.

Plaintiff also argues that at the remaining store, there are no allegations that damage occurred because of operations done to the

soil or groundwater. Plaintiff has submitted the affidavit of Joseph Falcone, an attorney representing Oscar Larson in the state court case, stating that there is no allegation in the state court suit that plaintiff performed any operations to soil and groundwater which resulted in their contamination. Affidavit of Joseph Falcone at ¶2, Exhibit D2, Plaintiff's Motion for Summary Judgment.

Based upon this evidence, the Court finds that plaintiff's summary judgment motion should be granted to the extent that it asks that the Court find that the damage done to soil and groundwater at stores 22, 63, or 68 [1] is not excluded under paragraph 2(j)(5). Because plaintiff did not perform operations upon any of the real property, none of the damage to that property could have resulted from such operations.[2] The Court denies summary judgment on this issue as to store 47 where plaintiff has admitted that it performed operations on real property. Plaintiff insists that the claim arising at this store is for damage resulting from the installation of a defective containment system instead of from operations performed upon the soil or groundwater. The cross-complaint involving store 47 states that plaintiff, among others, was involved in designing and installing the system and therefore liable for indemnification. Elzinga & Volkers, Inc.'s Cross-complaint Against Total Containment, Inc., Clawson Tank Company, and Oscar W. Larson Company, No. 91–72598–NF (Kent County Circuit Court March 24, 1992) at ¶¶ 25–26, Exhibit F, First Amended Complaint For Declaratory Relief.[3] Any operations performed to the soil and groundwater may well have been part of the overall installation of the system and thus be covered by the complaint. Plaintiff's motion for summary judgment is thus granted in part and denied in part. Defendant's motion is denied.

## B.

■ Defendant's motion for summary judgment requests that this Court grant summary judgment as to provision 2(b) which states:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) Assumed in a contract or agreement that is an 'insured contract'; or
>
> (2) That the insured would have in the absence of contract or agreement.

The Court has already interpreted this exclusion to apply only to those contracts in which the insured has agreed to indemnify or hold harmless another. *Action Auto v. Oscar W. Larson,* 845 F.Supp. at 442–43 (W.D.Mich.1993). Defendant contends that the damages in this case arise from plaintiff's breach of several contracts. It appears defendant may be arguing that the contracts are ones of indemnification. Defendant supports its argument with the complaints filed in the state court actions[4], but it has not provided copies of the actual contractual lan-

---

1. Plaintiff's Answer to defendant's renewed motion for summary judgment asserts that it is not seeking to recover any amount it paid or will pay as settlement for the claims concerning Store 22; however, there appears to still be an issue as to whether plaintiff is entitled to attorney's fees for time spent working on this store.

2. Of course, any damage relating to the replacement or repair of the system itself would be excluded under the clause contained in paragraph 2(j)(5) of section I as well as under paragraphs 2(k) and 2(*l*) of section I discussed later.

3. While none of the specific instances of negligence contained in Count II of the complaint relate to operations performed upon soil and groundwater, this list is not exclusive. Elzinga & Volkers, Inc.'s Cross-complaint Against Total Containment, Inc., Clawson Tank Company, and Oscar W. Larson Company, No. 91–72598–NF (Kent County Circuit Court March 24, 1992) at ¶ 29, Exhibit F, First Amended Complaint For Declaratory Relief. Furthermore, plaintiff itself admits that discovery is ongoing in this case. Plaintiff's Motion for Summary Judgment at 15.

4. It is apparent from the passages cited that in at least one instance the third party suing plaintiff is not claiming a right under a contract of indemnification but is instead claiming that a common law right to indemnification has arisen because of plaintiff's breach of contract.

guage itself.[5] Plaintiff has submitted no evidence which counters defendant's allegations that the contracts were ones for indemnification. At this point, the Court rules that, to the extent that the damages at issue are those which the insured is required to pay because of a contractual agreement in which the insured indemnified or agreed to hold harmless a third party, the exclusion applies. In all other respects, both parties' summary judgment motions are denied.

### C.

■ In its prior Opinion in this case, the Court addressed the issue of whether exclusions 2(k) or 2(*l*) of Section I of the Insurance Policy apply. These exclusions state:

2. This insurance does not apply to:

. . . .

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and included in the "product completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Insurance Policy, § 1 ¶ 2(k), (*l*).

■ This Court, relying on *Fresard v. Michigan Millers Mut. Ins. Co.*, 414 Mich. 686, 327 N.W.2d 286 (1982) and *Stone–E–Brick, Inc. v. Pennsylvania National Mut. Cas. Ins. Co.*, 81 N.J. 233, 239–40, 405 A.2d 788, 791 (1979), found that these exclusions only applied to damage done to the insured's work or work products. The Court further found that plaintiff did not ask that the coverage apply to the cost of repair or installation of the product itself but that, instead, plaintiff sought the cost of investigating and remediating pollution to adjacent land. Therefore, the Court found that the damages were not excluded under the clause. Defendant does not now dispute the Court's legal conclusion, however, it maintains that plaintiff is requesting damages incurred by re-

placement costs of the primary and secondary containment system. The Court rules that to the extent that plaintiff is demanding compensation for damages done to its work or work product, its claims should be dismissed under the rationale set forth in its prior opinion. The Court finds that the question of what portion of the damage is to the work and work product and what portion is to non-work product is one of fact best left for resolution by the jury.

### IV.

Defendant has also moved for reconsideration. Defendant argues that this Court was incorrect in finding that the coverage was not barred by the "absolute pollution exclusion clause" of the insurance policy. Defendant basically advances the same arguments that it did in the *Action Auto* case, and the Court denies its motion for the same reason. *See Action Auto v. Oscar W. Larson*, 845 F.Supp. at 436–39 (W.D.Mich.1993).

### V.

■ Finally, plaintiff argues that despite the fact that the Court has not yet made a final determination about what damages are excludable and what damages are covered under the exclusionary clause, it should nonetheless determine that garnishee has a duty to defend the insured. Michigan courts have determined that the duty of an insurer to defend an insured in a lawsuit is separate and severable from its duty to indemnify the insured for liability imposed as a result of that trial. *Meridian Mut. Ins. Co. v. Hunt*, 168 Mich.App. 672, 425 N.W.2d 111, 113 (1988) (citing *Reurink Bros. Star Silo, Inc. v. Maryland Casualty Co.*, 131 Mich. App. 139, 345 N.W.2d 659 (1983)). The Michigan courts have held:

The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are ground-

---

**5.** Furthermore, neither party has addressed the issue of whether paragraph 2(b)(2) which creates an exception to the exclusionary clause for dam-

age the insured would have to pay even without an indemnification agreement applies.

less, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy.... The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible.... In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor....

*Detroit Edison Co. v. Michigan Mutual Ins. Co.*, 102 Mich.App. 136, 141–42, 301 N.W.2d 832, 834 (1980) (emphasis in original) (internal citations omitted). The courts have held, however, that the insurer is not required to defend if the claims for damage are expressly excluded from the policy. *Meridian Mut. Ins. Co.*, 425 N.W.2d at 114.

The Court cannot yet make a determination as to whether plaintiff is entitled to reimbursement for attorney's fees. The Court has denied most of defendant's motion, either because the exclusions relied upon by defendant were inapplicable or because there was a question of fact as to their applicability. The Court, however, has ruled that to the extent liability was based upon contracts of indemnification, coverage may be excluded by paragraph 2(b) of the agreement. The Court therefore declines, for present, to rule upon this issue.

### VI.

For the reasons stated above, both parties' motions for summary judgment are granted in part and denied in part. Defendant's motion for reconsideration is also denied. The Court will schedule the matter for a status/scheduling conference before a Magistrate Judge to determine whether, in light of this Opinion, the parties will still be ready to proceed to trial in November or whether new dates need to be set.