**INLAND WATERS POLLUTION CONTROL, INC., Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant.**

No. 89–70584.

United States District Court, E.D. Michigan, S.D.

Jan. 31, 1992.

Mark S. Demorest, Robert P. Ufer & Assoc., Bloomfield Hills, Mich., for plaintiff.

Randall E. Phillips, Noel F. Beck, Provizer Lichtenstein, Southfield, Mich., Sheldon G. Karasik, Sheft & Sweeney, New York City, for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff Inland Waters Pollution Control, Inc. ["Inland Waters"] filed the instant lawsuit against defendant National Union Fire Insurance Company of Pittsburgh, Pa. ["National Union"] in Wayne County Circuit Court. Defendant removed the case to federal court under diversity jurisdiction. After discovery, the parties filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56(c). The motions were referred to Magistrate Judge Paul J. Komives. On August 24, 1990, the magistrate judge recommended that defendant's motion be granted and that plaintiff's motion be denied. On October 29, 1990, this court accepted the magistrate judge's recommendation and entered judgment in favor of National Union.

Plaintiff appealed to the United States Court of Appeals for the Sixth Circuit. On August 30, 1991, the Sixth Circuit affirmed in part, reversed in part and remanded the case to this court for further proceedings. 943 F.2d 52. On December 4, 1991, defendant renewed its motion for summary judgment to raise issues not previously reached by this court. Plaintiff responded December 23, 1991, and defendant replied January 2, 1992. For the reasons stated below, defendant's motion for summary judgment is granted.

## FACTS

Inland Waters is in the business of cleaning up and transporting hazardous and non-hazardous waste materials. Plaintiff purchased insurance from National Union for many years to protect itself against potential claims arising from its business activities.

The first liability insurance policy issued by National Union to Inland Waters went into effect on August 1, 1981, followed by several successive one-year occurrence-based liability insurance policies. In these policies, defendant promised to

> pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....

Plaintiff's Ex. 6 at 000079. The policy defines "occurrence" as

> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured....

*Id.* at 000068. Beginning August 1, 1986, National Union issued to Inland Waters several one-year liability insurance policies. In these policies, National Union agreed to defend and indemnify Inland Waters against claims for property damage first made against Inland Waters during the policy period, provided that the damage occurred after the retroactive date of August 1, 1985.

In January of 1981, Stricker Paint Products, Inc. ["Stricker"] and plaintiff entered into a contract under which plaintiff agreed to remove and dispose of several hundred drums containing waste paint materials from the Stricker property. Plaintiff's disposal of the waste materials took place on

the Stricker site in January and February of 1981.

Plaintiff began crushing the drums containing the waste materials as if the drums contained solid waste. During the process, plaintiff discovered that some of the drums contained liquids. The discovery was made when liquids leaked out of the drums being crushed. Plaintiff ceased crushing the drums and disposed of the remaining liquid waste appropriately. Plaintiff then loaded the crushed drums onto trucks for transportation to a landfill along with a few inches of frozen soil containing leaked waste liquid. Plaintiff then proceeded to spread lime on the property to soak up any remaining contaminated liquid. This lime-soil was also loaded onto trucks and transported to a landfill.

Over six years later, the Michigan Department of Natural Resources ["MDNR"] requested Stricker to conduct a hydrogeological investigation of its property. Stricker's hired consultant found a significant amount of solvent contamination was present in the soil and groundwater. The contamination was in the area of the Inland Waters disposal site.

Stricker filed suit against Inland Waters June 5, 1987. National Union refused to defend Inland Waters in the Stricker lawsuit. National Union has not reimbursed Inland Waters for any of its costs, attorneys' fees or expert witness fees in the Stricker lawsuit. Furthermore, National Union has not reimbursed Inland Waters for any portion of the $105,000.00 paid to Stricker.

Inland Waters filed suit against National Union seeking indemnification. This court granted defendant's motion for summary judgment. The Sixth Circuit affirmed this court's determination that the soil damage occurred prior to the effective date of National Union's first policy. The Sixth Circuit, however, reversed in part, concluding that it could not clearly determine from the record when the groundwater had become contaminated and, therefore, remanded for a factual determination.

Defendant now renews that part of its motion for summary judgment that was not previously reached by this court. Defendant claims that it is entitled to summary judgment because (1) the "known risk" doctrine bars plaintiff's suit, (2) the "loss in progress" doctrine bars plaintiff's suit and (3) defendant had no duty to defend Inland Waters in the Stricker lawsuit. Plaintiff claims that the cases cited by defendant do not stand for the propositions that defendant asserts. Further, plaintiff claims that any determination of "known risk" or "loss in progress" must be made after a factual determination concerning the date groundwater contamination occurred.

## STANDARD OF REVIEW

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. (Citation omitted.) *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not

produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## ANALYSIS

In this motion, defendant argues that this court should apply the "known risk" and/or "loss in progress" doctrines in insurance law to bar plaintiff's suit. Defendant points out that insurance covers risks, not certainties. Thus, defendant argues, because plaintiff had notice of the contamination or likelihood of contamination before the inception of the policies, the con-

tamination was a "known risk" and, therefore, no coverage for liability arising from that contamination exists. Further, defendant asserts that because the contamination process began prior to the effective policy date, the injury was a "loss in progress" and, therefore, not covered by the defendant's policies.

In the leading case cited by defendant, United States District Judge Bernard Friedman sets out the parameters of the "known risk" doctrine:

> For the known risk doctrine, the relevant question is whether the insured knew or reasonably should have known there was substantial probability of a loss before the policy period began. If such probability exists, then the risk is known and cannot be insured against. This is a commonly accepted premise of insurance law throughout the United States.

*Central Quality Servs. Corp. v. Insurance Co. of N. Am.*, No. 87–74473, slip op. at 32 n. 13 (E.D.Mich. June 6, 1989). In the instant case, plaintiff was aware of the spill. Plaintiff was also aware of the dangerous nature of the spilled liquid. Inland Waters sent samples of the liquid to Waste Compliance Services for analysis. The analytical report, issued January 27, 1981, indicated the presence of toxic contaminants xylene and toluene. However, plaintiff insists that it "reasonably believed that is had been successful in cleaning up the spill when it left the Stricker site in February 1991 [*sic*]."

Defendant also cites Michigan law and law from other jurisdictions that discuss the "known risk" doctrine. In *Mitchell Corp. v. Insurance Co. of N. Am.*, No. 86–51880–CK (Mich.Cir.Ct. Kent County Nov. 11, 1988), the court embraced the "known risk" doctrine as part of Michigan law. *See also County of Kent v. Home Ins. Co.*, No. 85–46740–CK (Mich.Cir.Ct. Kent County April 3, 1990); *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 480 N.W.2d 368, 373 (Minn.Ct.App.1992).

The "loss in progress" doctrine states that "where damage has begun to occur, no part of the loss may be insured against."

*Great Southwest Fire Ins. Co. v. Watt Indus., Inc.*, 229 Cal.App.3d 594, 280 Cal. Rptr. 249, 253 & n. 5 (1991); * *See also Mason Drug Co., Inc. v. Harris*, 597 F.2d 886, 889 (5th Cir.1979); *Summers v. Harris*, 573 F.2d 869, 872 (5th Cir.1978); *Presley v. National Flood Insurers Ass'n*, 399 F.Supp. 1242, 1245 (E.D.Mo.1975).

■ Because of the weight of authority outside of this jurisdiction, and because of the indications within the state of Michigan that the "known risk" and "loss in progress" doctrines would be acceptable, this court believes that the Michigan Supreme Court, if presented with this question, would adopt the "known risk" and the "loss in progress" doctrines into Michigan law. Because this court so believes, this court adopts the "known risk" and the "loss in progress" doctrines.

■ Under the "known risk" doctrine, the relevant question is whether plaintiff reasonably should have known that the water contamination would have ultimately resulted from the Stricker spill. *See Central Quality*, slip op. at 32 n. 13. Defendant affirmatively states that plaintiff should have known. Plaintiff just as forcefully states that it should not have known. Plaintiff's expert, through an affidavit, indicates that many factors must weigh in to this knowledge, and that, even with the evidence available to him, he could not know with any certainty of the future risks to the water table.[1] This creates a genuine issue of material fact for a jury. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Therefore, defendant is denied summary judgment under the "known risk" doctrine.

■ However, under the "loss in progress" doctrine, there is no factual dispute. Plaintiff spilled the contaminants on the ground. Despite its efforts at mitigating the damage, the water table became contaminated as a result of the spill. The damage may have taken years to manifest itself, but it is a direct result of the spill

caused by plaintiff. Because this spill took place prior to the effective date of the insurance contract, defendant is not liable to plaintiff for insuring against any injury flowing from that occurrence. There is no genuine issue of material fact present. *Id.; Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56. Therefore, defendant must succeed on its motion for summary judgment under the "loss in progress" doctrine.

### ORDER

For the foregoing reasons, it is hereby ORDERED that defendant's motion for summary judgment is GRANTED.

SO ORDERED.

---

* Editor's Note: Review Denied and Ordered not officially published July 22, 1991. See Cal. Rules of Court, Rule 976.

1. Affidavit of Raymond F. LaPort, at para. 7 (May 24, 1990).