ACTION AUTO STORES, INC.,
a Michigan corporation,
Plaintiff,

v.

UNITED CAPITOL INSURANCE
COMPANY, Garnishee-
defendant,

and

Oscar W. Larson Company, a Michigan
corporation, Defendant.

No. 5:91–CV–32.

United States District Court,
W.D. Michigan, S.D.

Sept. 7, 1993.

L. David Lawson, Winegarden, Shedd, Haley, Lindholm & Robertson, Flint, MI, for plaintiff.

Constantine N. Kallas, Leonard A. Henk, Kathlyn M. Rasmussen, Kallas & Henk, PC, Bloomfield Hills, MI, for Garnishee.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

This case is before the Court on cross-motions for summary judgment. Some of the issues presented by these motions were the subject of a February 8, 1993, Opinion and Order of this Court. At that time this Court required that the parties submit supplemental summary judgment motions to further brief some of the issues. The parties submitted the requested supplemental motions and, in addition, garnishee-defendant United Capitol Insurance Company ("garnishee") has submitted a motion for reconsideration. Furthermore, a partial summary judgment motion filed by garnishee in January is still pending. The Court notes at the outset that garnishee and defendant Oscar W. Larson Co. are parties in another action involving the identical insurance policies. See The Oscar W. Larson Co. v. United Capitol Insurance Co., 845 F.Supp. 445 (W.D.Mich.1993) (Gibson, J.).

## I.

The facts, as stated in this Court's prior opinion, are as follows: Defendant was employed by plaintiff Action Auto Store Inc. and Sun Oil Company to install gasoline containment systems at three Action Auto locations. In 1988, defendant filed various actions in state court for money it claimed plaintiff owed it for the work it had done.

Plaintiff counterclaimed for breach of express and implied warranties, alleging that defendant had negligently installed the systems. Plaintiff also alleged that defendant failed to remove contaminated soil from some of the locations.

Garnishee agreed to defend defendant in the consolidated suit, but it reserved the right to contest coverage, at least for some claims.[1] Plaintiff and defendant entered a partial settlement prior to trial. Garnishee was not a party to this settlement, and it apparently had no knowledge of the agreement until after it was made. According to the settlement, defendant dismissed its claims with prejudice. In return, plaintiff dismissed some of its claims and agreed not to execute on or enforce a judgment against any of defendant's assets except on those arising out of insurance policies or contracts. Defendant apparently stopped contesting some claims and a default was entered in the amount of $2,197,000.00.[2] Plaintiff's other claims were tried in state court where a jury rendered a verdict of two million dollars against defendant.

Plaintiff filed a writ of garnishment in the Ingham County Circuit Court against garnishee. Garnishee filed a garnishee disclosure statement in which it alleged that it was not indebted to defendant and that it should not be subject to garnishment. Garnishee argued that no underlying debt existed since the settlement agreement released defendant from liability, and it also argued that various provisions in the insurance policy prevented garnishment. On May 15, 1991, garnishee removed the case to this Court. Plaintiff moved to remand, but in an Opinion and Order dated January 13, 1992, this Court determined that it had subject matter jurisdiction over the action and that remand was improper.

Cross-motions for summary judgment were filed. Garnishee asked that this Court

1. Two reservation of rights letters were sent to defendant. The first letter, dated October 3, 1989, cited section F(2) of the "absolute pollution exclusion" clause of the policy. The October 3 letter also stated that "United Capitol Insurance Company does not waive any other defenses is (sic) may have under the Policy including the late notification of the loss." The second letter, dated March 26, 1990, cites other exclusions at issue in this lawsuit.

2. The default was based upon claims made by plaintiff that defendant had failed to completely remove contaminated soil from several of plaintiff's locations.

find that a settlement agreement executed between plaintiff and defendant barred coverage and it also asked the Court to rule that several distinct exclusions contained in the insurance agreement precluded coverage. Plaintiff argued that the Court should declare several defenses to coverage invalid. This Court denied garnishee's motion, and the Court granted in part and denied in part plaintiff's motion.

The Court found that garnishee could not rely on several of the defenses it had raised, but it allowed the parties to more fully brief other defenses to garnishment. Specifically, the Court made the following determinations:

1) The fact that plaintiff agreed to collect its judgment only from insurance proceeds instead of other assets does not relieve defendant of its "legal obligation" to plaintiff such that garnishee was relieved of its duty to provide insurance coverage to defendant. *Action Auto Stores v. United Capitol Insurance Co.*, 845 F.Supp. 417, 420–21 (W.D.Mich.1993).

2) A question of fact exists as to whether Paragraph 2(c)(3) of Section IV of the agreement bars coverage, but no other specific provision of the insurance policy bars coverage because of the settlement agreement entered into by plaintiff and defendant. *Id.* at 421–23.

3) Coverage is not barred by the "absolute pollution exclusion" contained in Paragraph F of an endorsement to the policy. *Id.* at 423–24.

4) Garnishee's duty to provide coverage is not barred by the exclusion contained in Paragraph 2(m) of the insurance agreement. *Id.* at 425–26.

5) Garnishee's duty to provide coverage is not barred by the exclusion contained in Paragraph 2(n) of the insurance agreement. *Id.* at 426–27.

The Court's February 8 Opinion noted that garnishee had not raised the known risk or loss in progress doctrines until its response to plaintiff's summary judgment motion, and it gave garnishee the opportunity to brief the issue more fully in a renewed summary judgment motion. *Id.* at 427. The Court also denied all summary judgment motions relat-

ing to the exclusion contained in paragraph J(5) of the agreement and requested rebriefing on that exclusion. *Id.* at 424–25. Each party has submitted briefs on the issues the Court requested be rebriefed. The parties have also discussed the applicability of several other exclusions which the Court previously declined to rule upon because they were inadequately briefed. *Id.* at 427. In addition, garnishee has submitted a motion for reconsideration.

## II.

■ Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc. (In re Atlas Concrete Pipe, Inc.)*, 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the nonmoving party, a reasonable fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citations omitted).

■ The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once this has been done, the nonmoving party must come forward with specific facts showing that there is a material issue of fact on an issue which the nonmoving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–52. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

## III.

■ This Court first examines whether coverage for this case is barred by the known risk or loss in progress doctrines.[3] Garnishee cites *Inland Waters Pollution Control Inc. v. National Union,* 783 F.Supp. 325 (E.D.Mich.1992), for the proposition that Michigan recognizes the known risk and loss in progress doctrines. In *Inland,* the Eastern District of Michigan determined that the Michigan Supreme Court, if presented with the question, would adopt the known risk and loss in progress doctrines into Michigan law. *Id.* at 329. The court then applied these doctrines to find that the insurance company involved in the litigation was relieved from its duty to provide coverage. The Sixth Circuit, since that time, has partially reversed that case. *See Inland Waters Pollution Control, Inc. v. National Union Fire Insurance Co.,* 997 F.2d 172 (6th Cir.1993).

It is to the Sixth Circuit's Opinion that this Court now turns for guidance in analyzing the issues before it. In *Inland Waters,* the Sixth Circuit determined that the known risk and loss in progress doctrines exist in Michigan.[4] The Sixth Circuit found, however, that an insurer must do more than show that a loss had occurred before the insured obtained insurance. The Court found the "loss in progress" doctrine applies only when the insured is "aware of a threat of loss so immediate that it might fairly be said that

the loss was in progress and that the insured knew it at the time the policy was issued or applied for." *Id.* at 177. The Sixth Circuit also found that foreknowledge was a prerequisite for the insurer to prevail under the "known risk" defense. *Id.* at 178. The Sixth Circuit found that the question of the insured's knowledge was, in *Inland Waters,* one of fact which was inappropriate for resolution on summary judgment motion.

■ This Court similarly finds that there is a material issue of fact which the jury should resolve about whether defendant had knowledge sufficient to bar coverage under the known risk or loss in progress doctrines. The parties cite different portions of the state court transcript to support their opposing views as to whether or not defendant had such knowledge.[5] As such, the Court cannot find that there is an absence of a material issue of fact, although it does conclude that garnishee is entitled to argue that coverage is precluded under this doctrine.

## IV.

■ The Court next turns to the issue of whether coverage is barred by certain exclusions contained in the insurance contract. When interpreting the insurance policy at issue, the Court again[6] bears in mind

---

3. The Court notes that the damages at issue in Sections III through VI of this Opinion were incurred pursuant to a judgment entered after a jury verdict. These damages are based on claims of faulty workmanship.

4. Another Court in this district independently reached a similar conclusion. *See CPC International, Inc. v. Aerojet–General Corporation,* 825 F.Supp. 795 (W.D.Mich.1993) (Hillman, J.).

5. In a supplemental brief, garnishee points out particular places in the transcript in which witnesses testified about the underlying damage. The Court notes that the question of when defendant first "knew" of the loss was not an issue in the underlying suit. The Court would thus not be bound by any decision of the state court on this issue, even if garnishee could prove that the other elements of collateral estoppel existed. The statements are also not admissions of the plaintiff, as the testimony extracted is largely from agents of defendant or witnesses who had no affiliation with any party in the lawsuit. The witnesses were not cross-examined upon this

particular issue. The Court thus cannot grant summary judgment based upon such statements. Of course, the garnishee is free to use such statements for impeachment purposes at trial, assuming that the use of such statements is otherwise in accordance with the Federal Rules of Evidence.

6. The Court used this standard in its February 8 Opinion. Garnishee objected, stating that the "contra insurer" rules should not be applied to policies of business insurers. It is interesting that garnishee makes this argument since it never argued this point in its initial round of briefing and, in fact, seemed to adopt a similar standard. *See* Garnishee's Brief in Support of its Motion for Summary Judgment at 4. Garnishee cites no Michigan or Sixth Circuit law in support of its proposition that ambiguous provisions should not be construed in favor of the insured if the insured is a business. The Court therefore continues to apply the contra insurance principles although, of course, it does so only in instances of true ambiguity.

that Michigan courts have held "(1) that an ambiguous contract provision must be construed against the insurer and in favor of the insured, and (2) that exclusionary clauses in insurance policies are to be strictly construed against the insurer." *Farm Bureau Mut. Ins. Co. v. Stark*, 437 Mich. 175, 181, 468 N.W.2d 498, 501 (1991). If the meaning of terms used in the contract are clear and unambiguous, however, their terms are "to be taken and understood in their plain, ordinary, and popular sense." *Id.* (internal citations omitted).[7]

■ The Court first examines Exclusion 2(j)(5) of the insurance contract. This exclusion reads as follows:

2. This insurance does not apply to:

 . . . .

 j. "Property damage" to:

 . . . .

 (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

Insurance Policy, Garnishee's Brief in Support of its Motion for Summary Judgment, Exhibit 1, § 1 ¶ 2(j)(5).[8]

During the initial round of briefing, plaintiff urged the Court to construe this language to exclude only coverage for damages to dispensers, pipes, and related products on which defendant was performing operations. Plaintiff argued that the exclusion was designed to cover damages to items which, when installed on real property, constitute fixtures. The Court rejected plaintiff's argument that the exclusion only applied to fixtures, citing garnishee's argument that such a narrow reading of the clause would render it nonsensical as other exclusions in the contract already exclude damage done to the insured's work product and materials. The Court thus interpreted the exclusion to cover

any real property on which defendant was physically performing operations but not to surrounding or adjacent property. The Court noted, however, that no evidence had been presented about how much of the damage at issue was done to such property; thus, at the summary judgment phase the Court was unable to determine whether the damage was excludable. The Court thus asked the parties to rebrief the issue providing more details about the type of damage done. The Court finds, after reviewing the briefs submitted by the parties, that issues of fact exist as to what property comes within the ambit of the excluded property as it has been defined by the Court. The Court therefore declines to grant either party's summary judgment motion and leaves this issue for proof at trial.

■ Plaintiff also argues that the language of Exclusion 2(j)(5) only precludes damage that occurred at the time defendant was performing work and not to damages that occurred after the work was completed. Plaintiff argues that the plain meaning of the phrase "are performing operations" compels a determination that the exclusion only applies to damages which occur while work is being performed. Plaintiff cites a portion of a treatise on Commercial Liability Insurance stating that the exclusions preclude damage to "that particular part of real property on which the work is being performed at the time of the loss." Gibson and McLendon, *Commercial Liability Insurance*, International Risk Management Institute, § V.D. 28. Plaintiff also cites an article by James T. Hendrick and James P. Wiezel entitled *The New Commercial General Liability Forms— an Introduction and Critique*, 36 FICC Quarterly at 319 (Summer 1986), which states that exclusions j(5) and j(6) of the standard form "define the coverage provided

---

**7.** The Court notes that while garnishee claims that defendant, through counsel, obtained certain modifications to the standard insurance policy, most of the clauses in dispute in the present litigation are lifted verbatim from standard forms used by insurers.

**8.** The Court notes that several of the motions which have been submitted have copies of the Insurance Agreement attached. For simplicity, all references in this Opinion are to the Agreement attached as Exhibit 1 to Garnishee's initial motion for summary judgment which is the document the Court cited in its prior Opinion.

to contractors for property damage to their not-yet-completed work." *Id.* at 357.[9]

Garnishee, on the other hand, interprets the phrase "arises out of" as synonymous with "comes as a result of" which it argues logically implies that the damages must come *after* the act. Garnishee also points to language occurring at the end of paragraph 2(j) which references all of six enumerated subparts of that paragraph. The language states, in relevant part, "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.' " Garnishee argues that as this statement refers only to paragraph (6), paragraph six alone is not applicable when damage occurs after the insured leaves the job site and that all the other subparts, including subpart (5), continue to apply after operations are completed.

As there are no cases on point, the Court must apply traditional methods of contract interpretation to resolve this dispute. Applying such interpretive methods, the Court determines that there are at least three reasonable ways of interpreting the paragraph at issue. First, the Court could emphasize the phrase "are performing operations" and determine that these words were meant to define the property both physically and temporally. Under such an interpretation, the phrase "arises out of" would simply imply a causal relationship between the damage and the operations being performed, and the exclusion would be restricted to damage occurring to property on which the insured is performing work at the time the work is being performed. Second, the Court could read the "are performing operations" language to define "that particular part of real property," distinguishing it from the other real property existing at the worksite. Under such an interpretation, the phrase "are

performing" would not contain a temporal element, and the phrase "arises out of" would imply that any damages, no matter when they occurred, were excluded as long as they resulted from the operations. Finally, the reader might attempt to reconcile the two phrases by interpreting them to mean that while the occurrence causing the damage must take place at the time work is being performed, damage may occur at any time so long as it results from a contemporaneous occurrence.

Because three separate interpretations are possible, the Court finds that the phrase is truly ambiguous. Therefore, the Court construes the paragraph against the insurer and in favor of the insured and holds that the only damage which is excludable is damage which occurred during the time defendant worked upon the property. This interpretation is supported by the treatises cited by plaintiff.[10] This determination, however, does not permit the Court to grant plaintiff's summary judgment motion as there are questions of fact about when the damage occurred. Garnishee argues that at least some of the damage at some of the worksites occurred while defendant was still performing operations. Such damage would be excluded by section 2(j)(5). This is a question of fact which the Court leaves for the jury's resolution. The Court denies both plaintiff's and garnishee's renewed motions for summary judgment.

## V.

The Court next considers garnishee's motion for reconsideration. Garnishee argues that the Court's determination that the "absolute pollution exclusion clause" did not bar coverage was incorrect. Garnishee also argues that it was inconsistent for the Court to

---

9. Plaintiff also cites two cases to support its interpretation of the exclusionary clause. The Court, however, agrees with garnishee that these cases are inapposite as, in one of the cited cases, *Houston Building Service Inc. v. American General Fire and Casualty Company,* 799 S.W.2d 308 (Tex.App.1990), the Court found it did not have to reach the issue and in the other, *C.O. Falter, Inc. v. Crum & Forster Ins. Cos.,* 79 Misc.2d 981, 361 N.Y.S.2d 968 (1974), the exclusionary provision discussed differed from the one at issue in the case *sub judice.*

10. While garnishee's interpretation of the concluding sentence of the exclusion may be read to support its position, it might equally be read to mention only paragraph j(6) and not j(5) because paragraph j(6) does not otherwise appear to be limited to work in progress while such a limitation is at least arguably apparent from the language of paragraph j(5).

find both that Oscar Larson had a legal obligation to pay the judgment and that the settlement agreement relieved Larson of liability. For the following reasons, the Court denies garnishee's motion.

### A.

The pollution exclusion endorsement states:

F. This insurance does not apply to:

(1) "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) at or from premises you own, rent or occupy;

(b) at or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste material;

(c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

(d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations

(i) to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants

(ii) if the pollutants are brought on or to the site or location by or for you.

(2) any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain treat (sic), detoxify or neutralize pollutants.

The word "pollutants" as used herein means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, vapor, soot, fumes, acids, biological elements and agents, and visual esthetics, the presence of any or all which (sic) adversely affects human health or welfare, unfavorably alters ecological balances of importance to human life, adversely affects other species of importance to mankind, or degrades the vitality of the environment for esthetic, cultural, and/or historical purposes.

The word "waste material" as used herein means materials which are intended to be or have been recycled, reconditioned or reclaimed.

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, UC–253(9–87) § F.

The Court noted in its previous Opinion that garnishee relied upon sections F(1)(d)(i) and F(2) of the exclusion agreement. It found that the language of section F(2) did not apply because no evidence had been submitted which suggested that the government ever directed defendant to take any action whatsoever concerning the pollutants. Garnishee does not contest this determination. The Court further found that section F(1)(d)(i) did not bar coverage because Larson was not "performing operations to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants." In reaching this decision, the Court construed the exclusion clause to apply only to situations in which the insured was hired to perform operations to remedy an existing pollution problem. The Court rejected garnishee's contention that, by performing operations to construct a container to hold gasoline, the defendant was "containing" pollutants such that the exclusion clause applied.

Garnishee requests that this Court reconsider this holding. Garnishee argues that defendant did do some work to remedy existing pollution at some of the sites and that, as a result, any damage done at those sites should be excluded under the language of the pollution exclusion policy. Garnishee further cites *League of Minnesota Cities Ins. Trust v. Coon Rapids*, 446 N.W.2d 419 (Minn.App. 1989), for the proposition that the pollution exclusion should apply not only to cases in which an insured is monitoring or cleaning up pollution but also to a case in which it should be doing so. Finally, garnishee states that because gasoline is *per se* a pollutant as defined by the exclusion clause, the construction of a tank in which to hold the gasoline constitutes containment of a pollutant and thus falls under the exclusionary language.

The Court examines each of these issues *seriatim.*

This Court already discussed garnishee's contention that defendant was performing operations to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, and it found that garnishee has not shown that such operations formed the basis of any of the claims at issue. The summary judgment motions concerned coverage for liability stemming from a judgment issued after a jury trial. As the Court noted in its previous opinion, the jury was specifically instructed to base its award only upon damages resulting from faulty work and not from failure to clean up pollution already in place. Garnishee could cite no evidence that any of the damages at issue were caused by faulty clean up. The only evidence it presented was that the clean up was discussed during the trial. The Court found such evidence insufficient in light of the specific jury instruction given.

 In its renewed summary judgment motion, garnishee asserts that defendant was employed to perform operations to test for the discharge of pollutants. Garnishee supports this position, however, only by citing an argument made by counsel in the initial state litigation. This statement is itself ambiguous as it only mentions that defendant asked permission to determine whether there had been "settlement in the tank." This statement is not enough to establish that testing for pollutants occurred. Garnishee does not offer an explanation of what testing for settlement entails or explain why it construes such a test to be a test for pollutants. Furthermore, even if garnishee presented credible evidence that this activity constitutes a test for pollutants, only such damage resulting from the operations being performed, i.e., from the testing itself, is excludable under the endorsement.[11] Garnishee has cited no evidence that any of the damages awarded in the lawsuit resulted

from the alleged testing. Furthermore, the jury instruction given at trial makes it unlikely that the damage at issue resulted from such testing.

 Nor is this Court persuaded by garnishee's citation of *Minnesota Cities.* Even if this Court were inclined to agree with the Minnesota Court of Appeals, it would nonetheless deny garnishee's motion because *Minnesota Cities* is easily distinguishable from the case *sub judice.* In *Minnesota Cities,* a Minnesota appellate court found that a pollution exclusion endorsement denied coverage for the discharge of a pollutant at any site whether the insured "is, *or should be,* performing operations to test for, monitor, clean-up removal [sic] contain, treat, detoxify, or neutralize the pollutants." *League of Minnesota Cities Ins. Trust v. Coon Rapids,* 446 N.W.2d 419, 422 (Minn.App.1989). Plaintiff argues that the *Minnesota Cities* court improperly read "or should be" into the agreement when it did not exist.[12]

This Court need not determine whether the *Minnesota Cities* court was correct in construing the language of the agreement in this manner. Assuming that the court properly extended the pollution exclusion clause to cover situations in which the insured, while not actually performing operations, has a duty to perform them, this Court must nonetheless deny garnishee's motion. While the Minnesota Court of Appeals may well have correctly deduced, from the evidence presented, that the insured had an ongoing duty to protect the public from accidental pollution leaks inside a city-operated arena, garnishee has presented no evidence that defendant had a similar duty in the case before this Court. Had garnishee shown that the damages awarded after trial resulted because defendant had neglected its duty to perform clean-up operations, garnishee might prevail under the rationale of *Minnesota Cities.* As garnishee has not provided any evidence that defendant should have

11. It appears from the transcript that plaintiff's state court argument was not that the faulty clean up resulted in contamination but that, since contamination existed after defendant removed certain soil, the contamination must have been the result of *recent* leaks.

12. The Court notes that the court in *Minnesota Cities* was examining subsection (1)(d)(ii) as well as (1)(d)(i) and that it expressly stated that bringing a Zamboni machine onto the premises resulted in an exclusion under section (1)(d)(ii). *Minnesota Cities,* 446 N.W.2d at 422.

been engaged in operations to test for or monitor pollution at the site or that the damage at issue resulted from its failure to perform such operations, the Court denies its motion.

■ Finally, the Court again rejects plaintiff's argument that defendant was engaged in operations to "contain" pollution because it was constructing a tank in which to contain gasoline. The Court notes that a principle canon of statutory interpretation is conveyed by the latin phrase *ejusdem generis,* meaning "of the same kind." Courts apply this rule to construe words in a list as being like or related to each other. The Court notes that the word "contain" appears in a list of words which deal with the remedying of a pollution problem. The court's interpretation might well differ if the other words in the list were "house," "construct," "hold," or "fill" instead of "test for," "monitor," "clean up," "remove," "treat," "detoxify," and "neutralize." The Court finds that the word "contain," as used in the insurance policy, does not cover the construction of a tank unless such construction is being undertaken to remedy an existing pollution problem.

■ In reaching the determination that the tank was not being constructed to contain gasoline, this Court held, in footnote 11, that gasoline was not a pollutant while it was in the tank. Garnishee contests this finding, citing the Michigan Supreme Court case of *Protective National Insurance Company v. Woodhaven,* 438 Mich. 154, 476 N.W.2d 374 (1991). *Woodhaven,* however, is distinguish-

able from the case before this Court. The exclusion clause at issue in *Woodhaven* precluded damage arising out of the *"discharge, dispersal, release, or escape* of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste material or other irritants, contaminants or pollutants." Because a discharge of one of the named substances occurred, the Court found that the clause precluded coverage. The exclusion clause in *Woodhaven* did not mention that the release must occur at a site at which the insured is employed to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants. The exclusion clause before this Court does contain such a restriction, and because no evidence of such operations was presented, the Court finds that the exclusion is inapplicable.[13]

The Court also notes the following language from *Woodhaven* which was written in response to the dissent of Justice Cavanagh:

[C]hief Justice Cavanagh seems to be suggesting that the words 'smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases' must be proven to fit the definition of another separate word in the exclusion—the word pollutant. Exclusion I does not read "release or escape of smoke, vapors ... or other irritants, contaminants" *which are "pollutants."* Exclusion I simply reads 'release or escape of smoke, vapors ... or other irritants, contaminants *or pollutants....*' As long as the substance is smoke, vapors, or other irritants, contaminants *or pollutants,* the

---

13. Garnishee's Supplemental Brief in Support of its Motion for Reconsideration contains citations to several cases which were not included in garnishee's initial brief. None of these cases convince the Court that it should overturn its decision. Garnishee cites *Park–Ohio Industries Inc. et al. v. The Home Indemnity Company,* 785 F.Supp. 670 (N.D.Ohio 1991) (Aldrich, J.); *Doyen v. Travelers Insurance Company,* No. 4091 CK, slip op. (Kalkaska Cir. Court Aug. 9, 1991); *Century Mutual v. Bragini,* No. D 91 2713 CZ, (Kalamazoo Circuit Court Sept. 29, 1992); and *American Contracting & Management v. Liberty Mutual Insurance,* No. 92–431224–CK (Oakland Cir. Court Mar. 5, 1993). These cases are inapposite as the exclusionary clause at issue in these cases precludes damage based upon the *discharge, dispersal, release or escape* of smoke, vapors, soot,

fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants. The cases do not deal with the more narrowly drawn exclusion for operations undertaken by the insured or its contractors or subcontractors to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Similarly, the *Horner* case, cited by garnishee is inapposite. The exclusion clause in *Horner* was far broader than the exclusion clause in the current case, stating: "We won't protect you against claims or suits *arising out of or in any way related to pollution, regardless of the type of pollution or by whom the pollution was caused."* *Horner Equipment Co. v. Insurance Company of North America,* No. 90–CU–1002, slip op. at 4 (E.D.Mich. Dec. 21, 1990) (emphasis in original).

exclusion applies (assuming the other language of the exclusion applies also). *Woodhaven*, 476 N.W.2d at 379 (Emphasis in original) (Footnote omitted).

In the case before this Court, the clause at issue refers only to pollutants which are later defined to include "solid, liquid, gaseous or thermal irritants or contaminants, including smoke, vapor, soot, fumes, acids, biological elements and agents, and visual esthetics...." Thus, the clause at issue, unlike the one in *Woodhaven*, specifically focuses on the release of pollutants. While plaintiff has conceded that gasoline may well fit the definition of a pollutant when it is in the soil or groundwater, it argues that it is not a pollutant nor an irritant, contaminant, etc., when it is in a gasoline tank. Because defendant was constructing a gasoline tank to hold gasoline to be dispensed and used by the public and was not attempting to contain a pollutant in order to keep it from causing environmental harm, the pollution exclusion clause is inapplicable.

### B.

 Garnishee also argues that the Court's Opinion of February 8, 1993, contradicts itself. According to garnishee, the source of this contradiction is that at one point the Court found that defendant was not relieved of liability for paying the state court judgment against it while the Court later found that the settlement agreement relieved defendant of some liability. This seeming contradiction exists only because garnishee reads two phrases out of context.

The issue before the Court was whether coverage was precluded by the fact that defendant entered into a settlement agreement with plaintiff before trial. Garnishee first argued that the settlement agreement relieved defendant of an obligation to pay the judgment and that, because garnishee's duty to pay depended upon defendant's duty, such an agreement also necessarily relieved garnishee of its duty. The Court found that the settlement agreement did not, under the rationale of *Alyas v. Gillard*, 180 Mich.App. 154, 446 N.W.2d 610 (1989), relieve defendant from "any and all liability" such that the insurer is relieved from its contractual obligation to pay the claim. The Court concluded that the settlement agreement was separate from the state court judgment. The Court further concluded that while defendant might be able to assert another cause of action against plaintiff if plaintiff attempted to execute against defendant's assets, the judgment nonetheless was legally binding against defendant and defendant was obligated to pay that judgment.

Garnishee also made the argument that coverage was barred by a provision in the insurance contract that precludes the insured from voluntarily making a payment, assuming an obligation, or incurring an expense without the consent of the insured. Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, § 4 ¶ 2(d). The Court noted that defendant did not assume any liability by entering into the settlement agreement. The agreement provided that some of the claims pending against defendant be dismissed, thereby relieving it of liability. Furthermore, defendant did not assume liability for any other claims under the agreement. The agreement merely directed where payment would come from *if* defendant was found to be liable.

Garnishee loses sight of the fact that the judgments, not the settlement agreement, form the basis of all liability at issue in this lawsuit. With this in mind, there is no contradiction in stating that the settlement agreement does not relieve defendant of obligations arising out of the judgments while at the same time holding that defendant did not assume any obligations in violation of the insurance contract by entering into the settlement agreement.

### VI.

The Court next examines the remaining exclusions garnishee has asserted bar coverage. Both parties have devoted part of their summary judgment briefs discussing these exclusions.

### A.

 Garnishee claims that coverage is barred because it does not come under the products completed operations hazard provi-

sion of the insurance contract. Both parties agree that the insurance contract provides limited coverage for work defined in the products completed operations hazard. This provision states:

> Products completed operations hazard includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1) Products that are still in your physical possession: or
>
> (2) Work that has not yet been completed or abandoned.

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, at § 5, ¶ 11(a).

Garnishee argues that, under this policy, damage is only covered when it occurs after operations have been completed. Garnishee then states that "[a]s the evidence which Plaintiff presented in trial in the underlying matter demonstrates, the property damage began to occur while defendant was still on the job." Garnishee, however, does not detail what this evidence is. Plaintiff does not dispute that the products completed operations hazard only applies to work that has been completed. It argues that the damage occurred after it left the worksite. The question of when the damage occurred is one of fact which the Court leaves for jury resolution.

### B.

Paragraph 2(*l*) of the insurance agreement excludes:

> "Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> "Your work" is defined as:
>
> a. Work or operations performed by you or on your behalf; and
>
> b. Materials, parts or equipment furnished in connection with such work or operations. "Your work" includes warranties or representations made at any time

with respect to the fitness, quality, durability, or performance of any of the items included in a. or b. above.

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, at § 1, ¶ 2(*l*).

Garnishee claims that the testimony presented by plaintiff in the initial state trial showed that the contamination was limited to fill material installed by defendant. Garnishee further argues that because these materials were brought onto the premises by defendant as part of its operations they should be considered part of defendant's work and thus be excludable under section 2(*l*).

Plaintiff responds that in addition to the soil contamination, there was groundwater contamination which garnishee's argument fails to take into account. Furthermore, plaintiff argues that the excavation and backfilling work were done by subcontractors and others and not by defendant. Plaintiff notes that the language of exclusion 2(*l*) specifically states that the exclusion is inapplicable when the operations are performed by a subcontractor.

Garnishee does not submit any specific evidence of its contention that the damage at issue was done only to plaintiff's work product. While garnishee provides evidence from the state court transcript that the contamination was largely limited to the "fill material," it does not provide any evidence showing that this fill material constitutes work of the defendant. Furthermore, garnishee does not show that the damage was only done to such property, nor does it dispute plaintiff's contention that damage was done to the groundwater. Therefore, the Court finds that garnishee has not met its burden of showing an absence of material fact for trial.

██ Garnishee also makes the argument that because the definition of "your work" includes express warranties, any liability arising out of defendant's breach of such warranties is excluded. Plaintiff does not respond to this argument. The Court thus finds that under the language of paragraph 2(*l*) such express warranties are excluded; however, this was only one claim in plaintiff's state court complaint, and the Court cannot grant summary judgment as to the entire

garnishment action based upon this exclusion.

■ Garnishee's motion for summary judgment is denied. Plaintiff's motion is granted to the extent that it asks that this Court find that any damage at issue done to groundwater does not fall under exclusion 2(*l*). In all other respects, plaintiff's motion for summary judgment is also denied.

## C.

■ Garnishee argues that paragraph 2(j)(1) of Section I of the insurance agreement precludes coverage for damage done to property that an insured owns, rents, or occupies. Garnishee's argument as to why this exclusion should apply consists of the conclusory allegation that "while Oscar Larson was performing its operations, it was legally occupying Plaintiff's property." Garnishee cites no cases, treatises, or other law to support its position that defendant "occupied" the premises it worked on.

Plaintiff's brief is only slightly more extensive than garnishee's. Plaintiff cites the single case of *Gregory v. Tennessee Gas Pipeline Company*, 948 F.2d 203, 207 (5th Cir. 1991), which applies the Black's Law Dictionary definition of occupy to mean "to hold or keep for use." Plaintiff argues that because Larson was only performing certain construction operations on Action Auto's property it was not holding the property or keeping it for use. Plaintiff's argument does not include a detailed application of the Fifth Circuit's legal holding to the facts of this case. The Court finds that neither party has met its burden of showing an absence of material fact for trial and therefore denies both summary judgment motions.[14]

## D.

■ The exclusion contained in paragraph 2(j)(6) excludes property damage to:

That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. . . .

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, at § 1, ¶ 2(j)(6). The exclusion goes on to state that it does not apply "to 'property damage' included in the 'products-completed operations hazard.'" *Id.* at ¶ 2(j).

Both parties agree that this exclusion does not apply in situations in which the damage occurred after defendant's work was completed since such work would be included in the products completed operations hazard. Therefore, the Court grants plaintiff's motion for summary judgment to the extent that it asks that this Court declare that any damage occurring after operations were completed be exempt from the exclusion. Garnishee contends that at least some of the damage at some of the stores began during the operations. The Court finds that the issue of when the damage occurred is a question of fact that should be resolved at trial.

The parties differ about the extent of the exclusion that exists for damage which occurred before the work was completed. The parties have different interpretations of the term "that particular part of real property." Plaintiff defines the word narrowly, claiming that the work incorrectly performed was performed on pipes, pumps and unions, not the surrounding groundwater and soil. Accordingly, plaintiff interprets the exclusion narrowly as well, arguing that it covers only damage done to the pipes, etc. Plaintiff cites

14. The Court noted in its previous Opinion that many issues were inadequately briefed. *Action Auto Stores v. United Capitol Insurance Co.*, 845 F.Supp. at 427. This inadequate briefing undoubtedly resulted from the parties' attempt to deal with multiple issues without exceeding the maximum page limit set by the local court rules. The Court's intention, in its previous opinion, was to narrow the issues and to allow the parties an opportunity to concentrate on these key issues. The parties' latest briefs, however, while discussing the issues the Court wished to focus on, again attempt to deal with multiple exclusions in a minimal amount of space. As a result, the parties have written briefs which seek summary judgment on issues to which they have devoted as little as one paragraph of analysis. The Court reminds the parties that under the summary judgment standard set out by *Celotex* and its progeny, the burden is on the nonmoving parties to come forward and show an absence of material fact for trial. The Court will not grant summary judgment based on the mere citation of an exclusionary clause without explanation as to how the facts of this case support its application or non-application.

three cases by the Texas Court of Appeals, two of which support its position and one of which reaches the opposite conclusion. Plaintiff concludes that such cases, at the very least, show that the clause is ambiguous and should be interpreted in favor of the insured. Garnishee, on the other hand, reads the exception to exclude all property damage caused by defendant's defective work as long as the damage occurred while the insured was still on the job.

The Court adopts a similar interpretation of the clause that it did of the phrase "that particular part" in conjunction with the preposition "on" that it did in paragraph 2(j)(5). The exclusion is not limited merely to the fixtures and tools defendant worked with but extends to any real property that was actually worked upon. The exclusion will not apply, however, to surrounding or adjacent land. The Court leaves it to the parties to prove at trial which parts of the contaminated land were worked upon and which were not.

### E.

■ The exclusion located at paragraph 2(b) of the insurance agreement states that the insurance does not apply to:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) Assumed in a contract or agreement that is an 'insured contract'; or
>
> (2) That the insured would have in the absence of contract or agreement.

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, at § 1, ¶ 2(b).

Garnishee claims that because most of the damages for which defendant was found liable in state court sprung from breach of contract or breach of express or implied warranties, this exclusionary clause applies. Plaintiff appears to argue both that the exclusion does not apply because the contracts at issue are not indemnification contracts and that the obligations fall within the exception outlined in paragraph 2(b)(2) because they

are ones arising under the law. The Court need not reach the issue of whether exception 2(b)(2) applies as it finds that the case is not one in which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Because the case is not one in which the insured promised to indemnify or hold harmless another, it does not fit within the plain language of the exclusionary clause. *See Commercial Union Ins. Co. v. Basic American Medical, Inc.,* 703 F.Supp. 629, 633 (E.D.Mich.1989) (phrase 'liability assumed by the insured under any contract or agreement' does not refer to the type of liability incurred as a result of the breach of every contract); *Aetna Cas. & Sur. Co. v. Spancrete of Illinois, Inc.,* 726 F.Supp. 204, 206–07 (N.D.Ill. 1989) (provisions afford coverage for liability *assumed* by a contractual provision, not liability arising out of a breach of a contractual provision); *Olympic, Inc. v. Providence Washington Ins. Co.,* 648 P.2d 1008, 1011 (Alaska 1982) ('Liability assumed by the insured under any contract' refers to liability incurred when one promises to indemnify or hold harmless another and does not refer to the liability that results from breach of contract); *see also The New Commercial General Liability Forms—an Introduction and Critique,* 36 FICC Quarterly at 319 (Summer 1986). Garnishee's motion for summary judgment is denied on this issue, and plaintiff's motion for summary judgment is granted to the extent that plaintiff asks the Court to find that coverage is not precluded because of the exclusionary clause located at paragraph 2(b) of the insurance agreement.

### F.

Paragraph 2(a) of section IV of the insurance agreement states:

> You must see to it that we are notified promptly of an "occurrence" which may result in a claim. Notice should include:
>
> (1) How, when and where the "occurrence" took place; and
>
> (2) The names and addresses of any injured persons and witnesses.

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, at § 4, ¶ 2(a). Garnishee argues that defendant had notice

of an occurrence in 1986 and 1987 but that it did not inform it of the potential claim until 1989. As stated in Section III of this Court's Opinion, there is an issue of fact as to when defendant had notice of a possible claim.

▮▮▮ In addition, the Court notes that, under Michigan law, late notice to an insurance company will not eliminate an insurer's obligations under a policy unless the insurer can demonstrate that it has been prejudiced by the delay. *West Bay Exploration Co. v. AIG Specialty Agencies, Inc.*, 915 F.2d 1030 (6th Cir.1990) (citing *Wendel v. Swanberg*, 384 Mich. 468, 478, 185 N.W.2d 348 (1971); *Wehner v. Foster*, 331 Mich. 113, 117, 49 N.W.2d 87 (1951); *Weller v. Cummins*, 330 Mich. 286, 292–93, 47 N.W.2d 612 (1951); *Wood v. Duckworth*, 156 Mich.App. 160, 401 N.W.2d 258 (1986); *Burgess v. American Fidelity Fire Ins. Co.*, 107 Mich.App. 625, 310 N.W.2d 23 (1981)). The burden of showing prejudice rests upon the insurer. *Id.* Prejudice will be found if the delay "materially" impairs the insurer's ability to contest its liability to the insured or its ability to contest the liability of the insured to a third party. *Id.* at 1036–37. The question of prejudice is generally best left to the trier of fact. *Id.* at 1037. Garnishee has failed to set forth evidence showing that it has suffered prejudice. This Court therefore denies garnishee's motion. The Court also denies plaintiff's summary judgment motion as it finds that if garnishee can show both late notice and prejudice it may succeed on this defense.

### G.

Plaintiff asks that this Court find, as a matter of law, that exclusion 2(g) of the insurance policy does not bar coverage. This section of plaintiff's motion is unopposed by garnishee. Exclusion 2(g) states that coverage is excluded for:

'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading....

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, at § 1, ¶ 2(g).

Garnishee has made no argument to this Court that this exclusion should apply while plaintiff, as the moving party, has set forth argument that it does not. Furthermore, nothing in the record before this Court suggests that such an exclusion applies. Therefore, the Court grants plaintiff's motion for summary judgment on this issue.

### VII.

The Court next considers garnishee's motion for partial summary judgment on the damages awarded pursuant to the default judgment issued in state court. Plaintiff has admitted that this damage is excludable. Brief of Action Auto Stores, Inc., in Response to Motion for Partial Summary Judgment dated January 5, 1993, at 2. Furthermore, because these damages were based upon defendant's failure to fully remove contaminated soil, they seem to come under the clear language of the "absolute pollution exclusion policy" contained in paragraph f(1) of the endorsement as discussed by the Court in Section V, Subsection A, of this Opinion.[15] The Court declines to rule on garnishee's motion[16] for Rule 11 sanctions at this time. The Court will revisit this motion at the conclusion of the proceedings before it.

### VIII.

The Court grants in part and denies in part each party's motion for summary judgment. The Court summarizes its findings as to each individual issue discussed in this Opinion or in its Opinion of February 8, 1993.

Plaintiff's summary judgment motion has been granted to the extent that it requests that this Court find that the agreement did

---

15. Plaintiff argues that garnishee has waived this defense by failing to assert it in its reservation of rights letters. As plaintiff has admitted that coverage does not exist because there was no "occurrence," the Court need not determine whether garnishee has waived its defense of the absolute pollution exclusion policy.

16. This motion is contained in Garnishee's Reply to Plaintiff's Opposition to Garnishee's Summary Judgment Motion.

not relieve defendant of its "legal obligation" to plaintiff. The Court further finds that no specific provision of the insurance agreement, with the possible exception of that contained in Section IV, paragraph 2(c), bars coverage due to the settlement agreement entered by plaintiff and defendant. Garnishee's motion for summary judgment on this issue is denied; however, garnishee may rely on the defense articulated in Section IV, paragraph 2(c), if it can show that defendant failed to cooperate with it in preparing a defense and that such lack of cooperation materially injured its ability to contest the merits of the claim. The motion for reconsideration made by garnishee with regard to these sections is denied.

The Court finds that the known risk and loss in progress doctrines exist in Michigan. The Court also finds, however, that under the Sixth Circuit's decision in *Inland Waters*, a question of fact exists as to when defendant had sufficient knowledge of the possible loss to bar coverage under the doctrines. The Court finds that there is a question of fact as to whether defendant gave late notice of its claim to the garnishee and of whether garnishee suffered prejudice by the delay. Therefore the Court denies both parties' summary judgment motions as they relate to paragraph 2(a) of Section IV of the insurance agreement. The Court interprets the products completed operations hazard to provide coverage for damage occurring once defendant left the worksite. The Court finds, however, that a question of fact exists as to when the damages occurred and leaves this question for jury resolution.

As to the exclusion clauses contained in Section I of the insurance contract, the Court has made the following determinations. Because defendant did not enter into an indemnification contract with plaintiff, the exclusion located at paragraph 2(b)(2) of Section I of the insurance agreement is not applicable. Plaintiff's motion for summary judgment is granted on this issue while garnishee's motion is denied. No evidence has been presented suggesting that paragraph 2(g) of Section I of the insurance agreement applies and garnishee has failed to make any argument regarding its applicability. Plaintiff's

motion for summary judgment is granted as to this issue. Neither party has submitted satisfactory evidence of the definition of "own, rent, or occupy," therefore both parties' motions relating to the exclusion located at paragraph 2(j)(1) of Section I of the insurance agreement are denied. Plaintiff's motion as to the exclusion located at paragraph 2(j)(5) is granted in part and denied in part. Garnishee's motion is denied. The Court accepts plaintiff's interpretation of the exclusionary clause, however, it finds that there is a question of fact as to whether any of the damages at issue are excludable under the clause. As to exclusion 2(j)(6), the Court grants plaintiff's motion for summary judgment to the extent that it asks that this Court exclude from the exemption all damage occurring after defendant's work was completed. Both parties' motion for summary judgment are denied in all other respects. Plaintiff's motion for summary judgment is granted to the extent that it asks that this Court find that damage to groundwater does not fall under paragraph 2(l) of Section I of the agreement. Both parties' motions for summary judgment are denied in all other respects. Plaintiff's motion for summary judgment is granted and garnishee's motion is denied with respect to the exclusion contained in paragraph 2(m) of Section I of the agreement. Plaintiff's motion for summary judgment is granted and garnishee's motion is denied with respect to the exclusion contained in paragraph 2(n) of section I of the insurance agreement.

Finally, the Court has found that coverage is not barred by the exclusion contained in paragraph F of the endorsement to the insurance policy. Furthermore, garnishee's motion asking that this Court reconsider its decision to deny its motion for summary judgment on this issue is also denied. Garnishee's motion for partial summary judgment is granted and the Court declines to rule on its motion for attorney's fees. The Court will adjourn the trial scheduled for September and schedule the matter for a Rule 16 conference before a Magistrate Judge to establish new dates.